This is our afternoon session, Oral Arguments. First case on the afternoon docket is case number 5-24-1358, People v. Victor X. Hurd. Arguing for the appellant is Eun Sung Nam. Arguing for the apolyte is Claire Connolly. Are the parties ready to proceed? May I do so? I would ask you also, if you do anyway, to please state your name for the record for the recording purposes. May it please the Court, Counsel, Eun Sung Nam on behalf of Victor Hurd. After pleading guilty to a single count of unlawful possession of a controlled substance with intent to deliver, Mr. Hurd was sentenced to 12 years in prison. With the assistance of defense counsel, he filed a motion to reconsider his sentence, which the trial court ultimately denied. On appeal, Mr. Hurd asked this Court to either remand for further plea proceedings due to counsel's failure to comply with the duties set forth in Illinois Supreme Court Rule 604-D, or alternatively to vacate his 12-year prison sentence and remand for a new sentencing hearing in light of the mitigating factors in his case and his co-defendant's much shorter 8-year sentence. So turning to the first argument, compliance with Rule 604-D requires more than what occurred in Mr. Hurd's case. The record refutes counsel's facially compliant Rule 604-D certificate because counsel raised an entirely new legal claim at the motion hearing, and due to counsel's failures, Mr. Hurd did not get a full and fair hearing on his postly motion to reconsider sentence. The issue of whether Mr. Hurd's 12-year prison sentence was grossly disparate to his more culpable co-defendant, Mr. Walker's 8-year prison sentence, this was a new claim that counsel raised at the motion hearing. While both parties in their briefs list out the contents of counsel's motion to reconsider sentence, neither party can point to this argument in that motion. This is undoubtedly a new claim. While some facts were included in the motion to reconsider, the argument that counsel raised in the actual motion to reconsider was in light of the statutory and non-statutory factors in mitigation and the lack of aggravation in this case. The sentence of 12 years that Mr. Hurd got was excessive. But pursuant to Rule 604-D and Illinois Supreme Court's recent decision in People v. Ratliff, if an argument is not specifically laid out in the postly motion, it's weighed on appeal. There can be no review of it. And in this case, we do not have this issue in the motion to reconsider. Because Supreme Court rules are not merely suggestions, but they're rules of procedure, counsel's failure to follow and perform the duties under Rule 604-D was a violation of the rule. She did not comply with the rule. Thus, Mr. Hurd asked this court to remand for further post-plea proceedings based on counsel's actions and the record which reviewed her certificate. Just to note, the State does rely on multiple cases in its brief, but it's important for this court to see that the cases that the State cites are predated to Ratliff. So Ratliff was from November 2024, and the cases that the State cites are mainly from before 2024. So in light of Ratliff, where claims that are not in the motion, postly motion, are waived, those cases do not suffice after Ratliff. The one case that the State does cite that's from 2025 is People v. Gomez. But as this court can see in the briefs, it's a Second District case. It's not published. But also, it's distinguishable, because in Gomez, the court discussed how one claim went forward. In Mr. Hurd's case, the motion itself has the excessive sentence claim, but also counsel makes the disparate sentence claim. Counsel has issues with aggregating factors and mitigating factors that the court didn't consider or shouldn't have considered. So there's multiple issues here versus the Gomez case, where there was one issue that went forward. So maybe there's less confusion, or maybe it's not as complicated. But again, even in the Gomez case, it was an involuntariness issue. And at the motion hearing, what came out was that the defendant may have had PCP, and that made the plea involuntary. So it was a claim that was in the motion and supplemented in the hearing. That's not the case here. Could you remind me, counsel, in the Ratliff case, was this argument that was not in the certificate fully advanced, heard, and considered by the trial court in that case? I believe the court – you may be confusing this – but I believe in Ratliff, the Supreme Court has a supervisory authority, so they can hear cases. But in this court, once a claim is waived, the appellate court doesn't have the ability to address those claims. So just to kind of reiterate, prior to Ratliff, the Supreme Court had cases that stated that if a claim is not in the post-plea motion, that it could be forfeited. And if it's forfeited, this court has the ability to address it. But per Ratliff, after 2024, if the claim is waived, then it's not available for appellate review. So that's kind of the distinction here, is prior to Ratliff, there could have been a forfeiture issue, and we could have argued plain error. This court could have addressed it regardless. But waiver is an intentional refingishment of the claim. So that's kind of how it should be distinguished. Does that kind of answer your question, Your Honor? So in your view, then, Ratliff forecloses the situation that was present, say, in the Curtis case, where the argument was fully fleshed out during the hearing, and the court considered it and entered it rolling. Did it still waive under those circumstances? Well, Your Honor, I would also – I would further distinguish Curtis, because in Curtis, the claim was included, or a part of the claim was included, and the motion hearing was an extension, or like a supplement. In this case, we're arguing that it's a completely new claim, because in our motion, there was – or in defense counsel's motion, there was only an excessive sentence argument, not a disparate sentence argument. Especially, there was no mention of Mr. Walker's eight-year prison sentence. There was only mention of the factors that came out at Mr. Hurd's sentencing hearing. So this is a new issue, new claim that came out at the motion hearing. And, as this court knows, defense counsel had enough time to make this argument. So defense counsel, I believe, filed the motion in July, and the hearing took place in January. So it's not that it immediately happened and she had no time to make the amendment. But here, there was ample time for her to make the amendment. Further, a full and fair hearing did not occur in this case, because as some of the cases at the state sites, in those cases, a full evidentiary hearing took place. It did not – that did not take place in this case. In the cases at the state sites, either defendant or defense counsel or both, they testified at the hearing. They had a full hearing. But here, we have defense counsel asking the trial court to take judicial notice. And essentially, the defense counsel is asking the trial court to do her job, instead of saying, Your Honor, these are the facts that we need to look at. I believe it's the – the case law states that there's six facts or comparisons that should be made for a disparate sentencing argument, such as the criminal history, which, again, was discussed in part here, or the circumstances of offense, which, again, was discussed in part here. But the four other – other portions were not addressed here. So the differences in the co-defendant's character, that was not discussed here. The rehabilitative potential was not discussed here. The co-defendant's history that led them to the current offense. And as this Court knows, for Mr. Hurd, unfortunately, he got involved with things at a very, very young age. So his upbringing, his – his issues that he had, we don't know in comparison to Mr. Walker. And the co-defendant's relative maturity. So the Court in this case talks about how Mr. Walker is younger than Mr. Hurd. But if this Court looks at the record, Mr. Hurd was 37. Mr. Walker was 35. This is not a teenager versus a 37-year-old. They're both in their 30s or in their mid-30s. This isn't a huge age gap. So we don't know in comparison their maturity. So Mr. Hurd, I believe, dropped out of school due to the activities that he had engaged in at the age of 11. Ultimately dropped out and got his GED. But, again, we don't know anything about Mr. Walker. And the Court – it's also important to point out that the Court doesn't explicitly say that it's taking judicial notice. Again, the Court was the sentencing judge – or the sentencing court for both co-defendants. But there's no actual claim that the Court states that it's actually taking judicial notice. And if this Court looks at the Court's statements at the hearing, the Court says prior to the hearing, it reviewed the transcripts of Mr. Hurd's case, the PSI for Mr. Hurd. But because this claim was not in the motion, there's no mention of Mr. Walker's record or transcripts or PSI. I can come back in Roberto unless this Court has any questions. We ask this Court to remand for further post-plea proceedings or alternatively a new sentencing hearing. Any questions, Justice Hackett? Not at this time, thank you. Mr. Bollinger, thank you. Was it Mr. Hurd's – it was his residence that the arrest took place, is that correct? Your Honor, it was Mr. Walker's residence. He's been living there longer. Mr. Hurd came down to find a job at the coal – with the coal mines, and he wasn't able to get the job, and so this is kind of where he ended up. But it was Mr. Walker's – the record says that it was Mr. Walker's place, and he was there for a lot longer than Mr. Hurd. Thank you. Thank you, Your Honor. As you mentioned, we've given an opportunity for a vote later. Attorney Connolly, are you ready to proceed? May it please the Court, Counsel, my name is Claire Wesley Connolly. I'm a staff attorney with the Illinois State's Attorney Appellate Prosecutor's Office. I'm here on behalf of the people of the State of Illinois in this case. Now, the defendant raises many issues regarding the sentence in this case. One of them has to do with when he filed a written motion for – to reconsider his sentence. When he did so, his counsel filed a Rule 604D certificate. That certificate, the defendant concedes, was facially compliant with the rule. So that matter has been resolved. What the defendant wants to do is the defendant wants this Court to look beyond the actual certificate and look at the record because the defendant claims that the record actually refutes that certification. But this Court can find that the certification was sufficient in this case, and the record did not refute based on two different things. One is whether or not the defendant had a full and fair hearing in this case, and absolutely in this case, he did. The second way is to find that the defendant did not raise a new claim in his – on the hearing on the motion to – on his written motion to reconsider sentence. Now, the case law shows that remandment is not required where a defendant has a full and fair hearing on his motion to reconsider sentence in this case. And the defendant absolutely did so in this case. He was given the opportunity when post-plea counsel presented his underlying claim that the defendant and the State had the opportunity to respond, and the trial court had the ability to rule on that issue. Now, the defendant wants to suggest that this constituted a new claim, and I will address that in turn. But everything that the defendant had raised in his written motion and at the hearing had to do with an excessive sentence claim. And this had to do with all the factors, the same factors, that this Court would look at when determining the trial court's decision-making regarding a claim of excessive sentence. All of the mitigating factors and all of the aggravating factors in this case. So, if we were to find out that this issue should have been separately raised in a motion, contrary to your position, if we were to find that, how does the Ratcliffe holding impact how we proceed? I don't think Ratcliffe impacts this at all, because, you know, that happened in 2024. And also in 2024, the Supreme Court decided people versus Brown. And in Brown, the Supreme Court found that Rule 604D must not be applied so mechanically as to require multiple remands. And when the Court has looked at these cases, they've looked at whether or not the defendant has otherwise been provided a full and fair hearing in this case. In this case, he raised several claims in his written motion in which he mentioned a comparison between his behavior and his co-defendant's behavior. And in this case, counsel merely expanded upon that prior claim and asked this Court to do a comparative analysis regarding it. It was the same exact claim. It's the same remedy. It's whether or not the trial court properly applied the mitigating and aggravating factors in this case. It's the exact same thing. And counsel also mentioned the development of this case law. And this Court, I'd like to point out, in both Sibley and Jackson, has applied this same standard as to whether or not there was a full and fair hearing in this case. As to the defendant's actual excessive sentence argument in this case, the defendant was running a drug operation out of his house. The police executed a search warrant, and it was, from what I recall from the record, it was listed as the defendant's home. That was the testimony of the officer during the sentencing hearing. Now, the police, when they executed that search warrant, what did they find? They found 27.22 grams of crack cocaine inside a hole in the bedroom wall, over 30 grams of crack cocaine on a countertop in the kitchen, cocaine residue on a cutting station, along with over 6 grams of meth in the floor of the police car. Now, the defendant in this case pled guilty to a reduced charge. But what you also have as evidence and what the trial court could consider at the sentencing hearing is the defendant was also not only just selling it, but he was also manufacturing crack cocaine at this residence. There were cooking utensils for making crack cocaine. There were digital scales with right residue, and there was packaging material and cutting agents present throughout this home. And in addition to the drugs that he had in this home, there were also six weapons found in there, and at least three were found within the defendant's wingspan, because he was charged with armed violence, wingspan, at the time that the police officers executed this search warrant. Those handguns were 9 millimeters. They were loaded, and he also had two rifles in that house. Along with the drugs, the guns, he also had approximately 200 rounds of ammunition. So this was a loaded arsenal. He was ready to protect his drug operation inside that residence. Now, in the brief, the defendant suggests that he was not involved in the actual prior sale of the narcotics. He was not charged with delivery of a controlled substance. He was merely charged with possession with intent to deliver, and that absolutely was established in this case, and he pled guilty to that account. Now, the sentencing range in this case was between 4 and 15 years. A sentence within the – and he received 12 years. A sentence within the proper sentencing range is presumed to be proper unless the defendant has the burden to show that it is greatly invariant with the spirit and purpose of the law or it is manifestly proportionate to the nature of the offense. All of the relevant evidence in this case showed that the trial court did not abuse its discretion. The trial court heard all of this evidence from the defendant during the sentencing hearing and found that 12 years was merited as a sentence. Now, as far as the comparison between the defendant's sentence and the co-defendant's sentence in this case, the trial court found that there were three differences. There was a difference between the age, the criminal histories, and the involvement in the offense. But before we get to that, counsel said it's not clear that the trial court did, in fact, take judicial notice of the co-defendant's case. Anything that's heard before the judge is presumed to have that trial court had to have considered, and it is entirely proper for the trial court to take judicial notice of a co-defendant's case, considering the fact that the trial court was the actual one who rendered a decision in this case. So you can ask to take judicial notice, but the trial court also had something called a brain and could remember what exactly they did in that other sentencing hearing to be able to make that comparison. Now, what you have in this case is... Oh, let me backtrack here for a second. In their opening brief, the defendant had suggested that similarly situated means that it's defendants who are convicted of the same offense, and that's not actually the standard. The standard is sentences will not be disturbed when it is warranted by the differences in the nature and extent of each participation or by the defendant's degree of culpability, potential for rehabilitation, or criminal history. It's a much more broader look and comparison between the two defendants beyond whether or not they were just convicted of the same offense. And what you have in this case is you have a defendant with a significant criminal history compared to his co-defendant. The defendant had a juvenile conviction for residential burglary. He received probation. What did he do? He violated that probation. Then he gets picked up for a new offense. He gets probation for a second time as an adult. What does he do? He violates that probation, and there was a current petition for violating probation that was pending at the time of this trial when he picked up this case. So he had a significant criminal history, and the co-defendant had a traffic ticket. So the court looked at those big differences and found that a 12-year and an 8-year sentence was entirely justified in this case. The trial court did not abuse its discretion when rendering a 12-year sentence to the defendant in this case based upon his involvement. In this case, the significant degree of danger that existed as a result of his drug operation and his desire to arm himself with an arsenal of weapons. Based upon that, we ask this court to affirm the defendant's conviction and sentence in this case. Thank you. Questions for the second? No, thank you. Thank you. Thank you. Your Honors, just to remind this court, it's a stringent waiver requirement for Rule 6014, and that's imposed by the Supreme Court, again, with Ratliff. And the state talks about Brown, the case that was also decided with Ratliff, but if this court reviews Brown, they're asking for a second remand. We're arguing here that Mr. Hurd didn't even get his first proper, fully compliant Rule 604D motion or hearing. So in Brown, they're asking for a second remand. He already got one. And I think it's important to realize in Brown, when the defendant had a chance to supplement or amplify or amend his claims, he decided to stick to the original argument. So he had a second chance, and he stuck to the same arguments. That's not what's happening here. On remand, he'll be able to make this argument and properly preserve it for this court's review. In Brown, he stuck with the same arguments, so a second or third remand would do nothing if he's going to stick to the same arguments repeatedly. Another point I want to make is that Mr. Hurd was on electronic home monitoring, and he was fully compliant throughout the case, up until the sentencing. He had no issues. He was fully compliant. And another point for this court is, we're talking about Mr. Hurd, who got involved with things at the age of 11, and he left it with misdemeanors. The felony conviction he has is an identity theft. So he came out as a person who has a nonviolent criminal history. Once his son was born, he tried to get his life together, and he left the gang. So he's rehabilitable. He showed that. He showed that through his history. A final point I want to make is that the trial court here stated that it was intrigued by this new evidence claim, that it was intrigued by why it would have to look at Mr. Walker's facts, circumstances record, or facts and circumstances versus Mr. Hurd's, except counsel didn't present this claim properly, and that's the issue here. Counsel didn't tell the court how to look at this claim, what exactly from Mr. Walker's record or Mr. Walker's case that the court should look at. So the court relied on its own memory, and as Mr. Hurd indicated in his reply brief, pages 11 and 12, the court got some stuff wrong. So there was inaccuracies. The court talked about how it was very troubled that one of the co-defendants, he couldn't remember which one, but he mentioned it in Mr. Hurd's hearing, that it was very troubled that one of the co-defendants brought a child that the individual had no relation or contact with to the court to try to sway the court, and that another child was brought in the presence of the courtroom for the sentencing hearing, and the court indicated that it was troubled by that, except the problem is it wasn't Mr. Hurd. It was Mr. Walker's case, and the fact that the court, even in the short amount of time, could not remember, could not remember which defendant's case this occurred on, that's a problem, and that's why we need to remand this case, or we ask this court to remand this case for further post-plea proceedings with fully compliant Rule 604D duties conducted by the trial attorney, or if this court finds that this issue was properly in the motion, then to address for a second argument in the alternative. So unless this court has any questions, we ask for a remand for further 604D post-plea proceedings or any sentencing hearing in the alternative for the second argument. Thank you. Questions, Justice Hackett? No, thank you. Justice Fuller? No, thank you. Thank you. Thank you, Honors. We appreciate the arguments you made in your briefs and the arguments you made today. We will take the matter under advisement and issue a decision in due course.